**Vito L. AFFATATI, Libelant,**

v.

**THE HAVFALK, Respondent.**

No. 20329.

United States District Court
E. D. New York.

Oct. 26, 1955.

Philip Brown, Brooklyn, for libelant.

Galli & Locker, New York City, Patrick J. McCann, New York City, for respondent.

ABRUZZO, District Judge.

The libelant, a longshoreman, was employed aboard the respondent motor ship Havfalk. He was working in the hold under hatch No. 4. His gang was moving heavy tin plates and he was using a crowbar in the performance of his work. While he was bending over, with this crowbar in his hand, he was struck in the back by some falling dunnage. The accident occurred on the 13th day of August, 1954, at about 10 a. m. It was the first day the longshoreman came aboard this vessel.

Two witnesses testified for the libelant, Louis Ponsiglione and Ralph Garguilo. Ponsiglione operated the Burton winch in the forepart of hatch No. 4 and Garguilo operated the up-and-down winch. Both men were compelled to work their winches together.

The libelant's claim is threefold: (1) The Burton winch was defective in that it stalled or slipped; (2) that the vessel was not seaworthy; and (3) that he was not furnished a safe place in which to work. These claims are interrelated, and the second and third claims necessarily depend upon the finding made with respect to the first one.

From the testimony of Ponsiglione and Garguilo it appears that they were moving pallets from under the wing in the fore-end of hatch No. 4 into the middle of the hatch. The Burton winch was used to pull the pallets from under the wing. These pallets were two or three inches above the cargo stored in that hatch. Libelant contends that just before the up-and-down winch could take over the Burton winch stalled, and before Garguilo could stop his winch the sling made an arc, swayed about one or two feet, struck the dunnage, dislodged it, causing the dunnage to strike the libelant.

Garguilo's testimony was taken by deposition. In his deposition he testified that after about 15 drafts had been removed from the hold, the Burton winch slipped many times. He was sure that the ship was being unloaded. He gave evidence that the pallets were right in the middle of the hatch in the lower portion on a bridle. As he got the signal to go ahead, the pallets hit the part of dunnage which was on the 'tween deck many feet higher than the floor of the lower deck of this particular hatch; the dunnage was dislodged, fell down and struck the libelant. He did not see any dunnage in the lower hold.

Ponsiglione, the Burton winchman at hatch No. 4, testified that they were loading the vessel by taking cargo from the pier to the bottom of hatch No. 4. At the time of the accident he was pulling a draft of pallets from under the wing in the lower hold and when the pallets came into the square of the hatch his winch stalled, and when this occurred the pallets hit the dunnage that was on top of the cargo of the lower part of hatch No. 4, causing a piece of the dunnage to fall and strike the libelant. He testified that he told the hatch boss that the winch was stalling. He also testified that he spoke to an officer aboard the vessel and complained to him, but his testimony is very vague and his identity of this person very indefinite.

Both of these witnesses testified that during that morning the winch stalled or slipped many times.

The respondent did not produce any eyewitnesses. The deposition of the mate was taken on May 31, 1955, and is in evidence (Exhibit A). He testified that the Havfalk docked on August 13, 1954, at 7:09 a. m. He was on watch at the time of the accident. He was never told by any winch operator or anyone else that anything was wrong with the winches. No repairs were made to the winches and immediately after this accident work continued without any complaints of stalling or slipping.

The deck log was produced and offered in evidence which attests to the fact that no complaint of stalling or slipping of the winches was entered thereon. The chief engineer whose deposition was taken the same day testified that these winches were made in Sweden and were installed new from the factory in June, 1954. His log was produced at the deposition and offered in evidence. The entries in this log are to the effect that these winches were new, operated perfectly, and no complaint was made to him of slipping or stalling.

Reverting to the testimony of Garguilo, he testified that a "Chico" was the big boss for Universal in charge of the ship and that this "Chico" was notified of the slipping of this winch but did nothing about it and told the men to continue the work. Frank Capodanno testified that he was an employee of the Universal Stevedoring Company for whom this libelant worked and that he was the boss for Universal and was known as "Chiche." He knew Garguilo and Ponsiglione and testified that these men never complained to him at any time that the winch for hatch No. 4 slipped or stalled.

The libelant claims to have sustained severe, permanent personal injuries, the nature and extent of which were sharply disputed by the respondent.

 The libelant has the burden of proving negligence on the part of the respondent. The negligence complained of centers about the so-called defect in the winch which caused it to stall or slip. If the winch did not in fact stall or slip then the ship would be seaworthy, for the unseaworthiness of the ship depends upon a finding of fact that the winch was defective so as to make it slip or stall. Upon that particular point the evidence of the libelant falls short of sustaining this burden. The so-called "Chico" (the witness Capodanno) testified that neither Garguilo or Ponsiglione ever made any complaint of defectiveness in the winch. The mate and chief engineer also denied that any complaints were made. This is corroborated by the logs of the ship made at the time the accident happened.

The veracity of Garguilo and Ponsiglione leaves something to be desired. One had the dunnage in the bottom of the hatch while the other one had the dunnage 'tween deck. One witness had the ship being loaded and the other testified that it was being unloaded. I, therefore, cannot place credence in their testimony.

The libelant did not prove by a fair preponderance of the evidence that there was any defect in the winch. The libelant did not prove that the ship was unseaworthy. There was no proof that a safe place to work was not furnished.

A decree, therefore, must be entered in favor of the respondent.

Submit findings of fact, conclusions of law and a decree within ten days.